**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**at Baltimore**

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| M&M BEDDING, LLC | * | Case No. 21-13606MMH |
| | * | Chapter 11 (Subchapter V) |
| Debtor. | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**DEBTOR'S FIRST AMENDED CHAPTER 11,**
**SUBCHAPTER V PLAN**

M&M BEDDING, LLC, the above-captioned debtor and debtor-in-possession (the "Debtor"), proposes the following First Amended Plan under § 1190 and § 1191 of Title 11 of the United States Code (the "Bankruptcy Code"). A brief history of the Debtor's business operations is attached hereto as **Appendix A**.

All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of their claims or interests. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.) This Plan is a proposal by the Debtor and subject to court approval after opportunity for objections and a hearing. Please refer to the Third Scheduling Order entered on _____ ___, 2021 [Dkt. ___] for important information regarding Plan voting and objection deadlines.**

Article I.  Source of Payments

During the term of this Plan, the Debtor shall submit the disposable income (or value of such disposable income) necessary for the performance of this plan to the Subchapter V Trustee (the "Trustee") and shall pay the Trustee the sums set forth herein. If the Plan is confirmed consensually then Debtor shall remit payment directly to creditors.

Article II.  Plan Term

The Debtor proposes to pay all Class 1 and Class 2 claims within thirty days after entry of an order confirming this Plan. Thereafter, unless indicated otherwise, Debtor will make a series of quarterly payments of $50,000 each beginning on January 15, 2022 and continuing on the 15th day of April, July, October, and January until all sums due under the Plan, including the payments due to Class 1 and Class 2 claim holders, have been paid.

Article III.  General Distributions Under Plan

The value of the property to be distributed under the Plan during the term of the Plan is not less than the Debtor's projected disposable income for that same period, unless parties in interest have agreed otherwise.  Unsecured creditors holding allowed claims will receive distributions, which the Debtor has valued based on the treatment of each class. The Plan also provides for the payment of secured, administrative, and priority claims in accordance with the Bankruptcy Code.

Article IV.  Classification and Treatment of Claims and Interests

1.  The Debtor has classified all claims and interests in accordance with §§ 1122, 1123, and 1190 of the Bankruptcy Code.  A chart detailing each class of claims or interests under the Plan, and the Debtor's proposed treatment for each is attached hereto as **Appendix B**.

2.  All parties claiming administrative expense priority (including unsecured claims) pursuant to § 507(a)(2) of the Bankruptcy Code but not already treated as such under this plan, shall file an application to approve their respective asserted administrative claim priority status no later than thirty (30) days after the Effective Date.  Any claim that is granted administrative expense priority shall receive the treatment set forth in **Appendix B**.

3.  Disputed Claims:

    a.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order and, either:

        i.  A proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or

        ii.  No proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent or unliquidated.

    b.  Delay of Distribution on a Disputed Claim:  No distribution will be made on a disputed claim unless the claim is allowed by a final non-appealable order.

    c.  Settlement of Disputed Claims:  Other than the Debtor's disputes with Southerland, Inc. and American Adjustables, LLC, which are settled and resolved pursuant to the terms of this Plan, the Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Federal Rule of Bankruptcy Procedure 9019.

        The Debtor has reached a settlement to resolve disputed claims held by Southerland, Inc. and American Adjustables LLC.  The terms of the settlement are summarized in **Appendix A** and the Settlement Agreement is attached hereto as **Appendix G**.  The Debtor shall be authorized to enter into the Settlement Agreement and shall be bound by the provisions of the Settlement Agreement. Notwithstanding any provision of this Plan or the Confirmation Order to the contrary, Southerland, Inc. and American Adjustables LLC shall be permitted to take all actions authorized or contemplated by the Settlement Agreement.

Article V.  Payments to Creditors Under Plan

Unless otherwise provided in this Plan or indicated on Appendix B, funds received by the Trustee or otherwise included in this Plan but not specifically disbursed to a secured creditor under this Plan, shall be used to pay the following claims in the priority indicated:

1.   Except as provided in § 1191(e) of the Bankruptcy Code, all claims entitled to priority under § 507 of the Bankruptcy Code shall be paid in accordance with § 1129(a)(9) of the Bankruptcy Code and as set forth on **Appendix B**.

2.   Pursuant to § 1191(e) of the Bankruptcy Code, the payment of claims entitled to priority under § 507(a)(2) and § 507(a)(3) of the Bankruptcy Code shall be paid under the Plan as set forth on **Appendix B**.

3.   All secured claims shall be paid in accordance with § 1129(b)(2)(A), § 1191(b), and § 1191(c) of the Bankruptcy Code, as set forth on **Appendix B**.

4.   After payment of the foregoing claims, sums received by the Trustee or disbursed by the Debtor shall be paid, on a pro-rata basis, to allowed general unsecured claims. **See Appendix B**.

5.   In accordance with § 1191 of the Bankruptcy Code and the terms of this Plan, the Debtor's equity security holders shall retain their interests in the Debtor as set forth on **Appendix B**.

Article VI.  Secured Claims Generally

The term "secured claim" as used in this Plan shall be consistent with § 506 of the Bankruptcy Code, and shall mean an allowed claim in an amount equal to the present value of the applicable creditor's interest in the Debtor's interest in the property, or in the amount subject to setoff, as may be established by this Plan, the Confirmation Order, or separate Order of the Court.

Debtor does not believe there are any secured claims in this case.

Article VII.  Trustee Compensation

The Trustee shall be paid for services rendered in this Chapter 11 case an administrative and/or priority claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**.  All fees and expenses requested by the Trustee, including those on Appendix B, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code.

Article VIII.  Attorney Compensation

The Debtor's attorney, _Ronald J. Drescher_, _4 Reservoir Circle, Suite 107, Pikesville, MD 21208_, shall be paid for the services rendered to the Debtor herein as an administrative and/or priority

claim under § 507 of the Bankruptcy Code and pursuant to Article IV of this Plan, as set forth on **Appendix B**. All fees and expenses requested by the Debtor's attorney, including those on Appendix B, are subject to review and approval by the Court under §§ 329 and 330 of the Bankruptcy Code. Debtor's attorney received a $15,000 retainer at the commencement of this case.

## Article IX.  Liquidation Analysis

Attached hereto as **Appendix D** is the Liquidation Analysis required by § 1190(1)(B) of the Bankruptcy Code and the Local Rules of this Court.

## Article X.  Debtor's Disposable Income and Plan Funding

An exhibit describing (i) the Debtor's projected disposable income as defined by § 1191(d) of the Bankruptcy Code is attached as **Appendix E**.

## Article XI.  Executory Contracts and Unexpired Leases

12.01 Assumption.  Pursuant to § 365 of the Bankruptcy Code, the Debtor assumes each executory contract and unexpired lease listed on **Appendix F**, effective upon the effective date of this Plan. Debtor will be deemed to have assumed all executory contracts and unexpired leases unless specifically stated otherwise.

## Article XII.  Property Vests in Debtor Free and Clear

Except as provided in this Plan or the order confirming this Plan, all of the property of the estate, pursuant to §§ 1141(b) and 1141(c) of the Bankruptcy Code, vests in the Debtor as of the Effective Date free and clear of any claim or interest of any creditor provided for by this Plan.

## Article XIII.  Confirmed Plan Binding on Debtor and Creditors

Except as provided in §§ 1141 or 1192 of the Bankruptcy Code, as applicable, the provisions of this Plan shall, upon confirmation, bind the Debtor, each and every creditor of this estate and each party in interest, whether or not the claim of such creditor or party is provided for by the Plan and whether or not such creditor or party has accepted or has rejected the Plan.

## Article XIV.  Discharge

Discharge.  If the Plan is deemed to be a consensual plan, on the confirmation date of this Plan, and subject to the occurrence of the Effective Date, the Debtor will be discharged from any debt that

arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code, but the Debtor will not be discharged of any debt: imposed by this Plan.

If the Plan is not deemed to be a consensual plan, as soon as practicable after the Debtor completes all payments under the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Bankruptcy Code.

Article XV. (Omitted)

Article XVI.  Miscellaneous

16.01 Definitions and Rules of Construction.  The definitions and rules of construction set forth in § 101 and § 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

16.02 Effective Date of Plan.  The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation.  If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

16.03 Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

16.04 Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors or assigns of such entity.

16.05 Appendices.  The Appendices attached to the Plan are incorporated into the Plan by reference as if the same were fully rewritten herein.

16.06 Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

16.07 Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Maryland govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

Article XVII.  Plan Proposed in Good Faith

The Debtor represents that it is within Debtor's ability to carry out this Plan, and the Plan is submitted in good faith.

Article XVIII.  Retention of Jurisdiction

The Court shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims

related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

DATED: <u>November 30, 2021</u>                    M&M Bedding LLC, Debtor


                                                            */s/Ronald J. Drescher*
                                                            Ronald J. Drescher
                                                            Drescher & Associates, P.A.
                                                            4 Reservoir Circle, Suite 107
                                                            Baltimore, MD 21208
                                                            Counsel for Debtor

**Appendix A**
(Debtor's Business History)


A.  Nature and History of the Debtor's Business or Commercial Activities:

M&M bedding was started in July of 2009 by Jeff Mowrey and Mohamed Maghari. Each partner owned 50% of the company. The principal of M&M Bedding, Mr. Maghari, has been in the adjustable bed industry for over thirty years.

M&M Bedding LLC sells Easy Rest Adjustable beds as its sole line of business. M&M bedding services NJ, east PA, MD, VA, NC, SC, GA, AL, MS, LA, TX, OK and AK.[1]


M&M Bedding and the other Easy Rest bedding dealers rely on leads to sell inventory. All leads are generated by Canal Works Advertising, an advertising company whose sole line of business is to develop leads for the adjustable bedding dealers. Canal Works Advertising has its own office and employees. The company's headquarters is in Trevose, PA.

In 2020, M&M Bedding was faced with two disasters at the same time: The first was Covid and the second was the death of Mr. Maghari's son in a tragic auto accident. In addition was the threat of the class action lawsuit in Florida.

At that time, Mr. Jeff Mowrey decided he wanted to walk away and exit the business.  Thus in October, 2020, Mr. Maghari raised the capital needed to support and take over the business. Mr. Jeff Mowrey was no longer a partner in M&M Bedding or any related company.[2]

After Mr. Mowrey's departure, Mr. Maghari became 90% owner of the bedding retail companies with another minority partner (John Kobel) owning the other 10%. As far as the advertising company (Canal Works Advertising) and the brand name license holder (Healthy Spirit), Mr. Maghari brought an investor that owns 20% of the advertising company and the licensing holder company.

All Advertising bills and product cost are billed to the bedding companies at the same rate for the dealership in the Mid-West that is not related in any way to M&M Bedding.

---

[1] The 48 states are divided by 5 dealerships that service the country.  There is a dealership that services the New England market (New England Bedding). Another dealership services west PA, OH IN, MI and IL (Ohio Valley Bedding). Another dealership services Florida and the west coast (Easy West Bedding). Another dealer totally and independently owned by Lee Pattridge services the Mid-west with its own office in MN.

[2] Mr. Mowrey remains a principal in Mowrey Family Limited Partnership, which owns a 50% interest in M&M Bedding's headquarters on 1401 South Edgewood Street, Baltimore MD 21227 with Maghari Enterprise LLC owning the other 50%.

M&M Bedding has a unique business model focused on selling adjustable beds by in-home sales.

M&M Bedding procures leads from Canal Works advertising (the company that is specialized in obtaining leads for customers who are interested in adjustable beds). The telemarketing department calls on customers who inquired about adjustable beds. M&M Bedding sets appointments with prospective customers at their own home and at their own convenience for a salesperson to meet with them and explain everything customers need to know about adjustable beds.

B. Ownership Structure of the Debtor's Business or Commercial Activities:

M&M Bedding is a limited liability company. It is owned by TDA Holdings LLC. TDA holdings LLC is owned by Mohamed Maghari (90%) and John Kobel (10%). Mohamed Maghari is the managing member for the LLC.

C. Description of the Performance of the Debtor's Business or Commercial Activities in the Three Years Before the Bankruptcy Filing and the Events Leading to the Debtor's Bankruptcy Filing:

### *The Covid-19 Pandemic*

Covid has had a devastating impact on M&M Bedding's business. For over a year it has been difficult to schedule appointments in customers' homes and the huge amount of money that was spent on advertising was basically wasted and had no return.

Even after the company was allowed to open its office in Maryland, many sales reps were in states that were not allowed to visit people in their homes. For more than a year, people were afraid to invite sales reps to their homes and the return on the advertising was devastating. Consequently the company lost many experienced sales reps and recruiting new reps during the pandemic was very challenging. M&M Bedding lost millions of dollars in revenue as a result of Covid. While this loss was partially ameliorated by the PPP loans obtained from Sandy Spring Bank (a total of $1,006,321) M&M Bedding's business operations have been devastated by Covid.

Attached hereto are a year to date profit and loss statement (through 10/31/2021) and balance sheet as of 10/31/2021.

### *The Class Action litigation.*

This litigation, *Karen Martie v. M&M Bedding, LLC*, case no. 2:20-cv-00043-SPC-NPM, was initiated in the United States District Court for the Middle District of Florida due to allegations that M&M Bedding violated the Telephone Consumer Protection Act ("TCPA") by making unsolicited calls to consumers who registered their phone numbers on the National Do Not Call Registry. The plaintiff in this case sought class status relative to all calls alleged to have violated the TCPA. Although M&M Bedding denies any wrongdoing, unfortunately M&M Bedding's

attorney at the time did not respond to the complaint and the clerk entered default against M&M Bedding. Thereafter, the Court denied M&M Bedding's motion to set aside the Clerk's default and on May 21, 2021 the plaintiff filed a Motion to Certify the class. M&M Bedding filed this Chapter 11 case to stay this litigation, specifically to delay potentially disastrous class certification.

Karen Martie has filed a proof of claim in the amount of $21,015,000.00 (the "Martie Claim"). On September 2, 2021, the Trustee filed an Objection to the Martie Claim (Dkt No 50) (the "Martie Objection") on the basis that, *inter alia*, it was doubtful that Martie would be successful in receiving approval to move forward with the required class certification analysis under FRCP 23 and FRBP 9014.

The Trustee's certificate of service indicated that the Martie Objection was duly served upon counsel for Martie in conformity with the applicable rules of procedure; however, Martie has not to date responded to the Martie Objection and on October 12, 2021 the Court entered an Order (Dkt No 64) sustaining the Martie Objection and disallowing the Martie Claim in its entirety.

### *Settlement with Southerland and American Adjustables*

Southerland mattress was the company's supplier for decades. Debtor believes that a few years ago the quality of Southerland's workmanship deteriorated, causing M&M Bedding multiple business issues.

Specifically, in its discussions with Southerland Debtor alleged that poor workmanship in products delivered to the company's customers caused many customers to cancel their orders. Debtor has been attempting to accurately estimate the number of sales that were lost because of the customer dissatisfaction when they saw the mattresses delivered by Southerland. The company believes that such losses could be over 2 million dollars, plus losses due to the insert, mattress exchanges and delivery costs.

Southerland has filed a proof of claim in the amount of $328,020.28. American Adjustables filed a claim for $689,097.23.

In lieu of litigation, Debtor, Southerland and American Adjustables have entered into a settlement agreement concerning the allowance and payment of these claims. The terms of the settlement agreement, are included within the treatment of Class 5 under the Plan, but the following is a summary of the settlement prepared by counsel to Southerland and American Adjustables and approved by the Debtor:

> The Debtor, Southerland, Inc., American Adjustables LLC, and several non-debtor entities have entered into a Settlement Agreement to resolve, among other things, the proofs of claim filed by Southerland and American Adjustables (together, "***Southerland***") and claims that Southerland has against certain other customers. A copy of this Settlement Agreement is attached hereto as **Appendix G**. The terms of this Settlement Agreement include the following:
>
> - Southerland timely filed two proofs of claim in this case asserting a combined claim of $1,008,552.51 (the "***Southerland Indebtedness***"). The Debtor will waive all defenses and counterclaims with respect to the claims asserted by Southerland in this case.

- The Debtor shall timely make all payments to Southerland as contemplated by this Plan in the total amount of $504,276.26. Provided that the Debtor does so, the Southerland Indebtedness shall be satisfied.

- The Debtor shall execute a confessed judgment note in the full amount of the Southerland Indebtedness. If the Debtor fails to make timely any payment to Southerland as contemplated by this Plan, and fails to cure following a notice from Southerland, Southerland shall be permitted to enforce the confessed judgment note and take all other steps under the Settlement Agreement.

- The Settlement Agreement also resolves the obligations of East West Bedding, Ohio Valley Bedding (both of which are affiliated with the Debtor) and Adjustable Bedding Concepts LLC to Southerland. The Total Settlement Amount to be paid to Southerland from all of these entities pursuant to the Settlement Agreement is $970,778.76 (which includes the payments to be made by the Debtor). The Debtor, East West Bedding, Ohio Valley, Adjustable Bedding Concepts, and Canal Works are all jointly and severally liable for payment of the Total Settlement Amount. [3]

To the extent that there is any discrepancy between this summary and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall govern.

---

[3] The full entity names and places of organization for the parties to the Settlement Agreement are:

M&M Bedding LLC, a Wyoming limited liability company; East-West Bedding LLC, a Wyoming limited liability company; Ohio Valley Bedding LLC, a Wyoming limited a liability company; Adjustable Bedding Concepts Inc., a Minnesota corporation; Canal Works Advertising LLC, a Wyoming limited liability company; Southerland, Inc., a Tennessee corporation; and American Adjustables LLC, a Tennessee limited liability company.

4:28 PM

11/15/21

Accrual Basis

# M&M Bedding, LLC
# Balance Sheet
### As of October 31, 2021

|  | Oct 31, 21 |
|---|---|
| **ASSETS** | |
| **Current Assets** | |
| **Checking/Savings** | |
| **SANDY SPRING** | |
| 1065 · SandySpring Commerical Checking | 96,453.87 |
| **Total SANDY SPRING** | 96,453.87 |
| **Total Checking/Savings** | 96,453.87 |
| **Accounts Receivable** | |
| 1075 · Accounts Receivable | 308,973.50 |
| **Total Accounts Receivable** | 308,973.50 |
| **Other Current Assets** | |
| 1105 · Petty Cash | 993.97 |
| 1083 · Sales/Sales Tax Receivable | 30,263.24 |
| 1110 · Finance Receivable | 109,444.93 |
| 1130 · A/R COD | 25,521.83 |
| 1170 · Advances | 3,968.00 |
| 1260 · Deposits | 19,653.60 |
| 1270 · Deferred Advertising | |
| 1270.02 · H/F Names | 11,351.48 |
| 1270.03 · MP Names | 101,361.94 |
| 1270.04 · Lettershop | 37,805.65 |
| 1270.05 · Print | 73,131.48 |
| 1270.06 · Leads | 259,455.02 |
| 1270.08 · DM Postage | 185,869.36 |
| 1270.10 · National Program | 77,962.50 |
| **Total 1270 · Deferred Advertising** | 746,937.43 |
| 1280 · Prepaid Expenses | 63,553.27 |
| 1295 · Inventory in Transit | 39,913.10 |
| 1410 · Inventory | 548,060.71 |
| **Total Other Current Assets** | 1,588,310.08 |
| **Total Current Assets** | 1,993,737.45 |
| **Fixed Assets** | |
| 1500 · Data Processing Equipment | 58,324.15 |
| 1510 · Software | 55,600.10 |
| 1520 · Furniture & Office Equipment | 55,575.53 |
| 1525 · Alarm System | 32,370.99 |
| 1530 · Leasehold Improvements | 36,490.22 |
| 1540 · Automobiles | 110,165.90 |
| 1550 · Accumulated Depreciation | -225,109.35 |
| **Total Fixed Assets** | 123,417.54 |
| **Other Assets** | |
| 1610 · Goodwill | 94,940.14 |
| **Total Other Assets** | 94,940.14 |
| **TOTAL ASSETS** | 2,212,095.13 |
| **LIABILITIES & EQUITY** | |
| **Liabilities** | |
| **Current Liabilities** | |
| **Accounts Payable** | |
| 2100 · Accounts Payable | 818,039.94 |
| **Total Accounts Payable** | 818,039.94 |
| **Other Current Liabilities** | |
| 2200 · PPP Loan | 503,161.00 |
| 2321 · Due to/from TDA Holdings, LLC | -47,166.68 |
| 2325 · Due to/from East West Bedding | -1,374.97 |
| 2500 · Bed Deposits | 72,416.49 |
| 2510 · Rep Deposits | 6,600.00 |
| 2600 · Accrued Expenses | 14,818.06 |

Page 1

4:28 PM

11/15/21

Accrual Basis

# M&M Bedding, LLC
## Balance Sheet
### As of October 31, 2021

|  | Oct 31, 21 |
|---|---|
| 2750 · Sales Tax Payable | 995.73 |
| **Total Other Current Liabilities** | 549,449.63 |
| **Total Current Liabilities** | 1,367,489.57 |
| **Long Term Liabilities** |  |
| 2900 · BK - American Adjustables, LLC | 688,577.51 |
| 2901 · BK - Canal Works Advertising | 2,303,695.17 |
| 2902 · BK -Hard Head Holdings | 31,320.00 |
| 2903 · BK - InContact | 73,491.72 |
| 2904 · BK - OptimumHQ | 15,748.00 |
| 2905 · BK - Southerland | 328,020.28 |
| 2906 · BK - TDA Holdings, LLC | 483,726.50 |
| **Total Long Term Liabilities** | 3,924,579.18 |
| **Total Liabilities** | 5,292,068.75 |
| **Equity** |  |
| 3000 · Member Equity | -2,778,087.58 |
| Net Income | -301,886.04 |
| **Total Equity** | -3,079,973.62 |
| **TOTAL LIABILITIES & EQUITY** | 2,212,095.13 |

**Page 2**

4:29 PM

11/15/21

Accrual Basis

# M&M Bedding, LLC
# Profit & Loss
### October 2021

| | Oct 21 | Jan - Oct 21 |
|---|---|---|
| **Ordinary Income/Expense** | | |
| **Income** | | |
| **Sales** | | |
| 4000 · Sales Beds | 852,663.38 | 7,257,220.26 |
| 4010 · Delivery Revenue | 69,252.00 | 593,816.00 |
| 4200 · Service Revenue | 8,587.50 | 98,727.48 |
| **4300 · Sales Returns & Chops** | | |
| 4305 · Customer Refunds | 0.00 | -355.00 |
| 4300 · Sales Returns & Chops - Other | -17,655.57 | -83,324.57 |
| **Total 4300 · Sales Returns & Chops** | -17,655.57 | -83,679.57 |
| **Total Sales** | 912,847.31 | 7,866,084.17 |
| 4250 · Parts-Service | 222.80 | 1,740.36 |
| **Sales Allowances** | | |
| 4322 · Preferred Credit | -86,209.79 | -635,039.41 |
| 4328 · United Consumer Financial Svcs | -19,973.27 | -140,853.01 |
| **Total Sales Allowances** | -106,183.06 | -775,892.42 |
| **Total Income** | 806,887.05 | 7,091,932.11 |
| **Cost of Goods Sold** | | |
| **Cost of Goods Sold** | | |
| 5000 · COGS - Beds | 74,068.98 | 620,992.43 |
| 5010 · COGS - Matts | 58,633.49 | 499,016.12 |
| 5015 · COGS - Non Inventory Parts | 1,348.50 | 47,094.02 |
| 5020 · Pillows/Sheets/Heats | 9,804.17 | 81,846.86 |
| 5025 · Freight | 46,351.47 | 240,607.13 |
| 5026 · Freight - BT | -9,920.00 | -52,300.00 |
| 5030 · Promotions - TV, Gift Card, Etc | 0.00 | 1,535.75 |
| **Total Cost of Goods Sold** | 180,286.61 | 1,438,792.31 |
| **5100 · Driver Expense** | | |
| 5105 · Outside Delivery | 51,600.00 | 430,862.50 |
| 5106 · Outside Service | 6,230.00 | 64,315.00 |
| 5110 · Delivery Dept Wages | 8,615.90 | 113,362.05 |
| 5115 · Customer Service Wages | 12,650.25 | 140,624.77 |
| 5120 · Driver - Deliv Service Labor | 2,352.00 | 9,332.00 |
| 5200 · Driver Lodging/Per Diem | 2,660.00 | 22,428.62 |
| 5205 · Driver Maps/Tolls/Etc. | 450.00 | 3,159.27 |
| 5210 · Driver - Vehicle Maint/Repair | 0.00 | 2,419.70 |
| 5220 · Fuel | 224.06 | 7,150.72 |
| 5300 · Warehouse Expense | 2,803.55 | 38,972.50 |
| 5305 · Warehouse Rent | 18,664.57 | 188,811.89 |
| 5310 · Trash/Dump | 2,256.78 | 22,473.89 |
| **Total 5100 · Driver Expense** | 108,507.11 | 1,043,912.91 |
| **Total COGS** | 288,793.72 | 2,482,705.22 |
| **Gross Profit** | 518,093.33 | 4,609,226.89 |
| **Expense** | | |
| **Payroll / Wages** | | |
| 6000 · Accounting Wages | 24,045.41 | 254,264.83 |
| 6001 · Guaranteed Payments to Members | 5,000.00 | 52,500.00 |
| 6005 · Executive Sales Wages | 26,076.90 | 324,839.93 |
| 6010 · Telemarketing Wages | 48,369.81 | 468,048.90 |
| 6025 · Computer Support Wages | 3,846.16 | 40,384.68 |
| 6045 · Finance Wages | 3,702.02 | 35,689.69 |
| 6110 · SUTA Expense | 0.00 | 1,341.23 |
| 6115 · Payroll Service | 4,492.85 | 48,574.38 |
| 6120 · Health Insurance | 4,757.52 | 82,605.64 |
| 6130 · Life Insurance | 407.08 | 4,069.49 |
| 6150 · PR Tax Expense | 10,583.69 | 122,788.90 |
| 6155 · 401K Match | 3,328.03 | 36,244.32 |
| 6300 · Accrued Wages | 0.00 | -27,179.93 |

Page 1

4:29 PM

11/15/21

Accrual Basis

# M&M Bedding, LLC
# Profit & Loss
### October 2021

| | Oct 21 | Jan - Oct 21 |
|---|---|---|
| **Total Payroll / Wages** | 134,609.47 | 1,444,172.06 |
| 7000 · Insurance - Pkg/Umbrella/Auto | 3,313.08 | 32,984.74 |
| 7010 · Insurance - Workers Comp | 2,133.70 | 17,572.80 |
| 7015 · Credit Card Discount/First Data | 3,311.59 | 48,091.13 |
| 7020 · Finance & Credit Fees | 4,393.96 | 38,900.78 |
| 7025 · Bank Fees | 340.34 | 1,157.05 |
| 7030 · Dues & Subscriptions | 138.85 | 1,739.02 |
| 7035 · Professional Fees | | |
| 7035.1 · Legal - Other | 0.00 | 31,536.25 |
| 7035 · Professional Fees - Other | 577.50 | 3,554.25 |
| **Total 7035 · Professional Fees** | 577.50 | 35,090.50 |
| 7040 · Postage | | |
| 7041 · Postage - Distributors | 0.00 | -467.09 |
| 7042 · Postage - Sales Material | 0.00 | 253.50 |
| 7040 · Postage - Other | 4,501.64 | 31,419.51 |
| **Total 7040 · Postage** | 4,501.64 | 31,205.92 |
| 7045 · UPS | | |
| 7046 · UPS - Parts | 0.00 | 1,630.44 |
| 7047 · UPS - Sales Material | 0.00 | 8,871.66 |
| 7048 · UPS - Distributors | 0.00 | -438.57 |
| 7045 · UPS - Other | 4,399.91 | 31,180.23 |
| **Total 7045 · UPS** | 4,399.91 | 41,243.76 |
| 7055 · Office Supplies/Equipment | 1,771.41 | 18,222.77 |
| 7060 · Computer Consulting | 6,450.63 | 70,633.14 |
| 7065 · Computer Supplies/Equipment | 803.00 | 4,641.95 |
| 7075 · Licenses/Permits/Filing Fees | 500.00 | 20,227.14 |
| 7080 · Employee Travel | 0.00 | 732.44 |
| 7085 · Employee Help Wanted Ads | 175.00 | 1,305.00 |
| Advertising | | |
| 7100 · Fulfillment Packing Slips | | |
| 7100.02 · Ebureau Fulfilment | 0.00 | 888.00 |
| 7100.01 · Pillow Fulfillment | 3,368.00 | 23,264.00 |
| 7100 · Fulfillment Packing Slips - Other | 23,011.80 | 402,965.92 |
| **Total 7100 · Fulfillment Packing Slips** | 26,379.80 | 427,117.92 |
| 7105 · Merge Purge Names | 55,599.05 | 562,291.01 |
| 7110 · Lettershop | 18,836.20 | 212,571.26 |
| 7112 · Postage | 88,360.83 | 965,423.32 |
| 7115 · Print | 35,915.01 | 381,615.82 |
| 7120 · Freight | 4,068.00 | 47,603.00 |
| 7130 · National Program Print | -37,471.63 | 288,033.33 |
| 7135 · National Program Internet | 8,819.75 | 55,986.52 |
| 7165 · Housefile Names | 0.00 | 625.00 |
| 7170 · Sales Supplies | 0.00 | 6,445.00 |
| 7190 · Contra - Leads Held | 6,277.00 | -85,613.94 |
| **Total Advertising** | 206,784.01 | 2,862,098.24 |
| 7200 · Rent | 16,972.00 | 191,483.60 |
| 7205 · Rent Leased Units/Storage | 1,612.21 | 15,959.13 |
| 7215 · Telephone | 20,125.83 | 209,405.34 |
| 7225 · Repair & Maintenance | 2,911.05 | 18,778.76 |
| 7235 · Ground Maintenance | 300.00 | 2,700.00 |
| 7245 · Utilities | 5,306.91 | 51,022.40 |
| 7250 · Cleaning Expense | 2,750.70 | 27,507.00 |
| 7255 · Pest Control | 195.00 | 1,950.00 |
| 7305 · Promotions | 638.14 | 3,513.78 |
| 7405 · Bad Debt | 9,720.92 | 107,546.56 |
| 7410 · Property Tax | 8,146.11 | 23,133.52 |
| 7450 · Exactor/Sovos Sales Tax Fees | 8,697.83 | 35,438.85 |
| Sales Rep | | |
| 8000 · Commission (1099) | 42,762.31 | 487,410.64 |
| 8015 · Mileage Reimb (Non-1099) | 1,006.68 | 21,718.20 |
| 8020 · Mileage/Gas Allowance (1099) | 10,220.00 | 88,560.00 |

Page 2

4:29 PM
11/15/21
Accrual Basis

# M&M Bedding, LLC
# Profit & Loss
### October 2021

|  | Oct 21 | Jan - Oct 21 |
|---|---|---|
| 8025 · Weekly Bonus (1099) | 20,183.90 | 153,596.90 |
| 8030 · Monthly Bonus (1099) | 7,625.00 | 69,975.00 |
| 8032 · Bonus (1099) | 0.00 | 1,600.00 |
| 8035 · Presentation Bonus (1099) | 8,400.00 | 72,700.00 |
| 8040 · Rep Travel (Non-1099) | 3,702.62 | 26,195.67 |
| 8045 · Per Diem (1099) | 6,350.00 | 99,150.00 |
| 8050 · Sign on Bonus (1099) | 2,100.00 | 18,900.00 |
| 8055 · Chargebacks | -1,048.61 | -1,661.31 |
| 8060 · Postage Allowance (1099) | 730.00 | 7,310.20 |
| 8080 · Commissions Billback | 9,320.07 | 61,074.74 |
| 8095 · Accrued Commissions | 0.00 | -4,754.07 |
| **Total Sales Rep** | **111,351.97** | **1,101,775.97** |
| Trainer Expenses |  |  |
| 8110 · Training Expenses | 1,528.16 | 4,258.48 |
| 8125 · Meals | 276.80 | 2,715.48 |
| 8135 · Supplies | -50.00 | -50.00 |
| 8140 · Help Wanted Ads/Recruiting | 12,635.40 | 95,738.80 |
| 8150 · Trainer Telephone Expense | 197.02 | 3,255.93 |
| **Total Trainer Expenses** | **14,587.38** | **105,918.69** |
| BILLBACK |  |  |
| 8205 · Remote Agent Billback | 40,996.79 | 389,659.25 |
| 8210 · BB Overhead  Rent/Utilities/Ins | -16,513.97 | -157,793.61 |
| 8215 · BB Recruiting/Trainer Expenses | -6,014.71 | -45,700.99 |
| 8220 · BB - Wages | -54,944.09 | -648,928.38 |
| 8225 · BB Operating Expenses | -12,257.82 | -124,186.92 |
| **Total BILLBACK** | **-48,733.80** | **-586,950.65** |
| **Total Expense** | **528,786.34** | **5,979,201.39** |
| **Net Ordinary Income** | **-10,693.01** | **-1,369,974.50** |
| Other Income/Expense |  |  |
| Other Income |  |  |
| 9000 · Other Income | -179.25 | 15,468.88 |
| 9005 · Sales Tax Discounts | 411.29 | 4,498.08 |
| 9010 · Interest Income | 0.00 | 82.06 |
| 9015 · PPP | 0.00 | 503,160.00 |
| 9025 · ERTC Credits | 25,810.01 | 557,734.08 |
| **Total Other Income** | **26,042.05** | **1,080,943.10** |
| Other Expense |  |  |
| 9500 · Interest Expense | 7.29 | 7.29 |
| 9525 · State Income Taxes | -1,789.00 | 12,231.33 |
| 9535 · Penalties | 180.95 | 616.02 |
| **Total Other Expense** | **-1,600.76** | **12,854.64** |
| **Net Other Income** | **27,642.81** | **1,068,088.46** |
| **Net Income** | **16,949.80** | **-301,886.04** |

**Appendix B**

(Classification and Treatment of
Claims and Interests)

| Class No. | Description of Claims or Interests in Class | Total Amount of Claims or Interests in Class | Proposed Treatment Under Plan (including whether impaired) | Estimated Percentage Recovery |
|---|---|---|---|---|
| 1 | Administrative Expense Priority Claims | $75,000 | Payment in full | 100% |
| 2 | Statutory Priority Claims 11 USC § 507 | $0 | Payment in full | 100% |
| 3 | Karen Martie as Class Claimant | $21,015,000.00 (disallowed) | Payment of $0 | 0% |
| 4 | Non-insider undisputed unsecured claims | $89,239.72 | Payment in full | 100% |
| 5 | Southerland and American Adjustables | $1,017,117.51 (disputed) | Payment of $504,276.25 by consent | 50% |
| 6 | Sandy Spring Bank for PPP loans | $1,006,321 | Such loans will be forgiven as provided in applicable COVID related nonbankruptcy laws | 0% |
| 7 | Insider unsecured claims | $2,818,741.67 | Subordinated to all other claims, but not discharged; will not participate in plan fund to be created hereunder | 0% |

NOTES:

1. Administrative expense priority claims estimated to be primarily those of Subchapter V Trustee, Marc Albert, and counsel for Debtor, Ronald J. Drescher of Drescher & Associates, PA
2. No priority claims have been either filed or scheduled
3. A detailed statement of anticipated disbursements is set forth hereinbelow
4. **COVID PROVISION: In the event the company experiences a loss in revenue due to any type of closure related to the COVID pandemic the plan will be placed on hold until the time the company can re-establish sales and delivery.**

Net available for creditors      $679,235.98

| Creditor (Claim no) | Claim Scheduled | Claim Filed | Claim To Be Paid | Total Distribution |
|---|---|---|---|---|
| **SECURED** | | | | |
| None | | | | |
| | | | | |
| **PRIORITY** | | | | |
| Anticipated Professionals (admin) | | | $73,576.00 | $73,576.00 |
| Total Secured/Priority | | | | |
| Net for Nonpriority Unsecured | | | | |
| | | | | |
| **CLASS ACTION CLAIMANT** | | $21,015,000.00 | $0.00 | $0.00 |
| | | | | |
| **UNDISPUTED UNSECUREDS** | | | | |
| InContact Inc. | $73,491.72 | | $73,491.72 | $73,491.72 |
| OptimumHQ | $15,748.00 | | $15,748.00 | $15,748.00 |
| Total | | | | $89,239.72 |
| | | | | |
| **COMPROMISED GENERAL UNSECURED (50% DISTRIBUTION)** | | | | |
| American Adjustables (2) | | $689,097.23 | | |
| Southerland (3) | | $328,020.28 | | |
| Total | | | $504,276.26 | $504,276.26 |

| Schedule of Payments | | Admin | Class Action | Compromised UC | Undisputed UC | Total Paid |
|---|---|---|---|---|---|---|
| | 1/15/22 | $25,000.00 | $0.00 | $25,000.00 | | $50,000.00 |
| | 4/15/22 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 7/15/22 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 10/15/22 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 1/15/23 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 4/15/23 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 7/15/23 | | $0.00 | $37,856.00 | $12,144.00 | $50,000.00 |
| | 10/15/23 | | $0.00 | $37,856.00 | 12,144.00 | $50,000.00 |
| | 1/15/24 | | $0.00 | $37,856.00 | 12,144.00 | $50,000.00 |
| | 4/15/24 | | $0.00 | $37,856.00 | 12,144.00 | $50,000.00 |
| | 7/15/24 | | $0.00 | $37,856.00 | 12,144.00 | $50,000.00 |
| | 10/15/24 | | | $37,856.00 | 12,144.00 | $50,000.00 |
| | 1/15/25 | | | $37,856.00 | 12,144.00 | $50,000.00 |
| | 4/15/25 | | | $25,004.26 | 4,231.72 | $29,235.98 |
| Total paid | | $85,720.00 | | $504,276.26 | 89,239.72 | $679,235.98 |

## **Appendix C**

(Claims Being Modified Under Section 1190(3))

Not applicable

**Appendix D**
(Liquidation Analysis)

| ASSETS | Total on Balance Sheet 08.31/21 | Book Value | Liquidation Value | |
|---|---|---|---|---|
| SandySpring Commerical Checking | 74,304.22 | 74,304.22 | 74,304.22 | |
| Petty Cash | 7,672.26 | 7,672.26 | 7,672.26 | |
| Accounts Receivable | 164,979.63 | 164,979.63 | 41,000.00 | Most are inter-related entities who would find it difficult to remain in business as they would have to absorb the advertising costs nationwide |
| Sales/Sales Tax Receivable | 24,409.97 | 2,290.31 | 0.00 | Amended sales tax returns would need to be filed for us to get these funds back from the state. Only $2,290.31 would be eligible |
| Finance Receivable | 91,163.58 | 72,930.86 | 72,930.86 | Amount we would get less finance discount taken by finance companies |
| A/R COD | 16,979.28 | 16,979.28 | 4,244.82 | We would have to try and collect these funds from various customers |
| A/R Other | 900.00 | 900.00 | 0.00 | We would have to try and collect these funds |
| Deposits | 20,138.60 | 20,138.60 | 0.00 | Mainly Security Deposits and utility deposits we would not get any of this back |
| Deferred Advertising | 610,101.87 | 400,000.00 | 0.00 | Advertising paid for - does not become producing for 90 to 120 days would not get any of this money back |
| Prepaid Expenses | 84,249.69 | 84,249.69 | 0.00 | Vendors would not return the funds |
| Inventory in Transit | 231,625.98 | 231,625.98 | 115,812.99 | Inventory would have to be auctioned off. Only Limited retail outlets would be interested in Product |
| Inventory | 334,397.05 | 334,397.05 | 167,198.53 | Inventory would have to be auctioned off. Only Limited retail outlets would be interested in Product |

| Fixed Assets | Total | Book Value | Liquidation Value | |
|---|---|---|---|---|
| Data Processing Equipment | 58,324.15 | 3,788.42 | 1,136.53 | Bulk is over 10 years old |
| Software | 55,600.10 | 0.00 | 16,680.03 | 12 year old phone system fully depreciated |
| Furniture & Office Equipment | 55,575.53 | 34,057.53 | 25,543.15 | Based on a % of the book value. |
| Alarm System | 32,370.99 | 18,163.78 | 13,622.84 | Camera system purchased in 2016 only movable elements. |
| Leasehold Improvements | 36,490.22 | 32,493.76 | 0.00 | |
| Automobiles | 110,165.90 | 34,885.67 | 28,000.00 | Seven Year old vehicle with over 120K in miles |
| Goodwill | 94,940.14 | 0.00 | 0.00 | |
| **Total Fixed Assets** | **443,467.03** | **123,389.36** | **84,982.54** | |
| | | | | |
| TOTAL ASSETS | 2,104,389.16 | | 568,146.22 | |

Based on this analysis, Debtor believes only $568,146.22 would be available to creditors upon a liquidation of the company. This amount is less than the $593,514.97 Debtor expects to pay unsecured creditors through the Plan.

Moreover, upon a liquidation creditors would lose several of the benefits available under the plan:

1. The affiliated companies would not agree to subordination of their claims. These companies assert claims against the Debtor as follows:

| | |
|---|---|
| Canal Works Advertising, LLC | $2,303,695.17 |
| Hard Head Holdings, LLC | $31,320.00 |
| TDA Holding LLC | $483,726.50 |
| Total | $2,818,741.67 |

2. Moreover, upon liquidation Debtor would reject all outstanding real property leases, some of which have multiple years remaining on their terms. The anticipated additional unsecured claims arising from the rejection of these leases are as follows:

19

| Property Address | Base Rent | # of Months | Total Based on Remaining Lease Period | Remaining Period Of Base Rent |
|---|---|---|---|---|
| 64 "A" Nance Lane Nashville, TN | 4,500.00 | 12 | 54,000.00 | 09/01/22-08/31/23 |
| | Total | | 106,200.00 | |
| | | | | |
| | | | | |
| Maghari Enterprises, LLC | 8,486.00 | 4 | 33,944.00 | 09/01/21-12/31/21 |
| 1401 S Edgewood Street Baltimore, MD 21227 | 8,740.58 | 12 | 104,886.96 | 01/01/22-12/31/22 |
| | 9,002.80 | 12 | 108,033.60 | 01/01/23-12/31/23 |
| | 9,272.88 | 12 | 111,274.56 | 01/01/24-12/31/24 |
| | 9,551.07 | 12 | 114,612.84 | 01/01/25-12/31/25 |
| | Total | | 472,751.96 | |
| | | | | |
| | | | | |
| Mowrey Family LTD Partnership | 8,486.00 | 4 | 33,944.00 | 01/01/21-12/31/21 |
| 1401 S Edgewood Street Baltimore, MD 21227 | 8,740.58 | 12 | 104,886.96 | 01/01/22-12/31/22 |
| | 9,002.80 | 12 | 108,033.60 | 01/01/23-12/31/23 |
| | 9,272.88 | 12 | 111,274.56 | 01/01/24-12/31/24 |
| | 9,551.07 | 12 | 114,612.84 | 01/01/25-12/31/25 |
| | Total | | 472,751.96 | |
| | | | | |
| | | | | |
| | Base Rent Lease Obligation | | 1,589,004.62 | ***** |
| | | | | |
| ***** Base Rent Number only.  Does not reflect CAM Charges, RE taxes and other lease obligations | | | | |
| | | | | |

Under this analysis, Debtor believes an additional $1,589,004.62 would need to be added to the claims sharing in the distribution of the proceeds from liquidation.

3.  Finally, on liquidation claims of a Chapter 7 trustee, in the estimated amount of $50,000, would also be payable on a priority basis.

**<u>Appendix E</u>**
(Projected Disposable Income)

Sums payable under the Plan shall be derived from Debtor's post-confirmation operations. The projections are set forth on the following pages.

| | | Jul - Sep 2021 | Oct - Dec 2021 | TOTAL |
|---|---|---|---|---|
| Sales | | 2,200,000.00 | 1,800,000.00 | 4,000,000.00 |
| Discounts | 12% | (264,000.00) | (216,000.00) | (480,000.00) |
| Total Income | | 1,936,000.00 | 1,584,000.00 | 3,520,000.00 |
| Cost of Goods Sold | 31.00% | 600,160.00 | 491,040.00 | 1,091,200.00 |
| Payroll & Remote Agents | 23% | 445,280.00 | 364,320.00 | 809,600.00 |
| Operating Expenses | 11% | 212,960.00 | 174,240.00 | 387,200.00 |
| Advertising | Varies | 890,560.00 | 617,760.00 | 1,508,320.00 |
| Sales Rep Expenses | 14.70% | 284,592.00 | 232,848.00 | 517,440.00 |
| Training Expenses | FIXED | 13,164.80 | 10,771.20 | 23,936.00 |
| Net Profit(Loss) | | (510,716.80) | (306,979.20) | (817,696.00) |

| | | Jan - Mar 2022 | Apr - Jun 2022 | Jul - Sep 2022 | Oct - Dec 2022 | TOTAL |
|---|---|---|---|---|---|---|
| Sales | | 2,600,000.00 | 2,800,000.00 | 2,800,000.00 | 2,300,000.00 | 10,500,000.00 |
| Discounts | 12% | (312,000.00) | (336,000.00) | (336,000.00) | (276,000.00) | (1,260,000.00) |
| Total Income | | 2,288,000.00 | 2,464,000.00 | 2,464,000.00 | 2,024,000.00 | 9,240,000.00 |
| Cost of Goods Sold | 28.00% | 640,640.00 | 689,920.00 | 689,920.00 | 566,720.00 | 2,587,200.00 |
| Payroll & Remote Agents | 23% | 460,000.00 | 492,000.00 | 492,000.00 | 460,000.00 | 6,652,800.00 |
| Operating Expenses | 9% | 205,920.00 | 221,760.00 | 221,760.00 | 190,080.00 | 839,520.00 |
| Advertising | 25% | 572,000.00 | 616,000.00 | 616,000.00 | 506,000.00 | 2,310,000.00 |
| Sales Rep Expenses | 14.50% | 331,760.00 | 357,280.00 | 357,280.00 | 293,480.00 | 1,339,800.00 |
| Training Expenses | FIXED | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 56,000.00 |
| Net Profit(Loss) | | 63,680.00 | 73,040.00 | 73,040.00 | (6,280.00) | 203,480.00 |

| | | Jan - Mar 2023 | Apr - Jun 2023 | Jul - Sep 2023 | Oct - Dec 2023 | TOTAL |
|---|---|---|---|---|---|---|
| Sales | | | | | | |
| Discounts | | | | | | |
| Total Income | | 2,600,000.00 | 2,800,000.00 | 2,800,000.00 | 2,300,000.00 | 10,500,000.00 |
| | 12% | (312,000.00) | (336,000.00) | (336,000.00) | (276,000.00) | (1,260,000.00) |
| | | 2,288,000.00 | 2,464,000.00 | 2,464,000.00 | 2,024,000.00 | 9,240,000.00 |
| Cost of Goods Sold | | | | | | |
| Payroll & Remote Agents | 28.00% | 640,640.00 | 689,920.00 | 689,920.00 | 566,720.00 | 2,587,200.00 |
| Operating Expenses | 23% | 460,000.00 | 492,000.00 | 492,000.00 | 460,000.00 | 6,652,800.00 |
| Advertising | 9% | 205,920.00 | 221,760.00 | 221,760.00 | 190,080.00 | 839,520.00 |
| Sales Rep Expenses | 25% | 572,000.00 | 616,000.00 | 616,000.00 | 506,000.00 | 2,310,000.00 |
| Training Expenses | 14.50% | 331,760.00 | 357,280.00 | 357,280.00 | 293,480.00 | 1,339,800.00 |
| Net Profit(Loss) | FIXED | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 56,000.00 |
| | | 63,680.00 | 73,040.00 | 73,040.00 | (6,280.00) | 203,480.00 |

| | | Jan - Mar 2024 | Apr - Jun 2024 | Jul - Sep 2024 | Oct - Dec 2024 | Total |
|---|---|---|---|---|---|---|
| Sales | | 2,600,000.00 | 2,800,000.00 | 2,800,000.00 | 2,300,000.00 | 10,500,000.00 |
| Discounts | | (312,000.00) | (336,000.00) | (336,000.00) | (276,000.00) | (1,260,000.00) |
| Total Income | | 2,288,000.00 | 2,464,000.00 | 2,464,000.00 | 2,024,000.00 | 9,240,000.00 |
| | 12% | | | | | |
| Cost of Goods Sold | | 640,640.00 | 689,920.00 | 689,920.00 | 566,720.00 | 2,587,200.00 |
| Payroll & Remote Agents | 28.00% | 460,000.00 | 492,000.00 | 492,000.00 | 460,000.00 | 6,652,800.00 |
| Operating Expenses | 23% | 205,920.00 | 221,760.00 | 221,760.00 | 190,080.00 | 839,520.00 |
| Advertising | 9% | 572,000.00 | 616,000.00 | 616,000.00 | 506,000.00 | 2,310,000.00 |
| Sales Rep Expenses | 25% | 331,760.00 | 357,280.00 | 357,280.00 | 293,480.00 | 1,339,800.00 |
| Training Expenses | 14.50% | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 56,000.00 |
| Net Profit(Loss) | FIXED | 63,680.00 | 73,040.00 | 73,040.00 | (6,280.00) | 203,480.00 |

| | | Jan - Mar 2025 | Apr - Jun 2025 | Jul - Sep 2025 | Oct - Dec 2025 | Total |
|---|---|---|---|---|---|---|
| Sales | | 2,600,000.00 | 2,800,000.00 | 2,800,000.00 | 2,300,000.00 | 10,500,000.00 |
| Discounts | | (312,000.00) | (336,000.00) | (336,000.00) | (276,000.00) | (1,260,000.00) |
| Total Income | | 2,288,000.00 | 2,464,000.00 | 2,464,000.00 | 2,024,000.00 | 9,240,000.00 |
| | 12% | | | | | |
| Cost of Goods Sold | | 640,640.00 | 689,920.00 | 689,920.00 | 566,720.00 | 2,587,200.00 |
| Payroll & Remote Agents | 28.00% | 460,000.00 | 492,000.00 | 492,000.00 | 460,000.00 | 6,652,800.00 |
| Operating Expenses | 23% | 205,920.00 | 221,760.00 | 221,760.00 | 190,080.00 | 839,520.00 |
| Advertising | 9% | 572,000.00 | 616,000.00 | 616,000.00 | 506,000.00 | 2,310,000.00 |
| Sales Rep Expenses | 25% | 331,760.00 | 357,280.00 | 357,280.00 | 293,480.00 | 1,339,800.00 |
| Training Expenses | 14.50% | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 56,000.00 |
| Net Profit(Loss) | FIXED | 63,680.00 | 73,040.00 | 73,040.00 | (6,280.00) | 203,480.00 |

| | | Jan - Mar 2026 | Apr - Jun 2026 | Jul - Sep 2026 | Oct - Dec 2026 | Total |
|---|---|---|---|---|---|---|
| Sales | | 2,600,000.00 | 2,800,000.00 | 2,800,000.00 | 2,300,000.00 | 10,500,000.00 |
| Discounts | | (312,000.00) | (336,000.00) | (336,000.00) | (276,000.00) | (1,260,000.00) |
| Total Income | | 2,288,000.00 | 2,464,000.00 | 2,464,000.00 | 2,024,000.00 | 9,240,000.00 |
| | 12% | | | | | |
| Cost of Goods Sold | | 640,640.00 | 689,920.00 | 689,920.00 | 566,720.00 | 2,587,200.00 |
| Payroll & Remote Agents | 28.00% | 460,000.00 | 492,000.00 | 492,000.00 | 460,000.00 | 6,652,800.00 |
| Operating Expenses | 23% | 205,920.00 | 221,760.00 | 221,760.00 | 190,080.00 | 839,520.00 |
| Advertising | 9% | 572,000.00 | 616,000.00 | 616,000.00 | 506,000.00 | 2,310,000.00 |
| Sales Rep Expenses | 25% | 331,760.00 | 357,280.00 | 357,280.00 | 293,480.00 | 1,339,800.00 |
| Training Expenses | 14.50% | 14,000.00 | 14,000.00 | 14,000.00 | 14,000.00 | 56,000.00 |
| Net Profit(Loss) | FIXED | 63,680.00 | 73,040.00 | 73,040.00 | (6,280.00) | 203,480.00 |

**<u>Appendix F</u>**

(Assumed Executory Contracts and
Unexpired Leases)

**Fill in this information to identify the case:**

Debtor name ___M&M Bedding LLC___

United States Bankruptcy Court for the: ___District of Maryland___

Case number (If known): _____  Chapter __11__

☐ Check if this is an
amended filing

## Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases                    12/15

**Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.**

1. **Does the debtor have any executory contracts or unexpired leases?**

   ☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

   ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| **2.1** | State what the contract or lease is for and the nature of the debtor's interest | Lease of nonresidential real property TN Warehouse 64 A Nance Lane Ste A Nashville, TN 37210 Lessee | Horrell Management Services, Inc. 3030 Sidco Drive Nashville, TN, 37204 |
| | State the term remaining | 3 months | |
| | List the contract number of any government contract | | |
| **2.2** | State what the contract or lease is for and the nature of the debtor's interest | MD Trainer month to Month rental 2703 Ashfield Dr Windsor Mill MD 21244 Lessee | Ike Diibor 7517 Heatherfield Drive Windsor Mill, MD, 21244 |
| | State the term remaining | Month to month | |
| | List the contract number of any government contract | | |
| **2.3** | State what the contract or lease is for and the nature of the debtor's interest | Sales tax compliance | Sovos Compliance, LLC 200 Ballardvale St. Bldg 1 4th Floor Wilmington, MA, 01887 |
| | State the term remaining | 2 years | |
| | List the contract number of any government contract | | |
| **2.4** | State what the contract or lease is for and the nature of the debtor's interest | Payroll fulfillment | HR Servie Grouop LLC dba Infinity HR 3905 National Drive Suite 400 Burtonsville, MD, 20866 |
| | State the term remaining | Year to year | |
| | List the contract number of any government contract | | |
| **2.5** | State what the contract or lease is for and the nature of the debtor's interest | 64 "A" Nance Lane, Nashville TN Lessee | Gil Fuqua, Jr. 4215 Harding Pk, Suite 305 Nashville, TN, 37205 |
| | State the term remaining | 3 months | |
| | List the contract number of any government contract | | |

Debtor    M&M Bedding LLC
_____          Case number (if known)_____
          Name

**Additional Page if Debtor Has More Executory Contracts or Unexpired Leases**

Copy this page only if more space is needed. Continue numbering the lines sequentially from the previous page.

| List all contracts and unexpired leases | | State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease |
|---|---|---|
| 2.6 | State what the contract or lease is for and the nature of the debtor's interest | 365 Exchange Drive Arlington TX 76011<br>Lessee | Stagliano Family Trust<br>c/o JSC Realty & Investment Services<br>2711 Lyndon B Johnson FWY #130<br>Dallas, TX, 75234 |
| | State the term remaining | 3 years | |
| | List the contract number of any government contract | | |
| 2.7 | State what the contract or lease is for and the nature of the debtor's interest | 1401 South Edgewood Street, Baltimore, MD 21227 - sublease landlord holds 50% interest | Maghari Enterprise LLC<br>13560 Broccolino Way<br>Clarksville, MD, 21029 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.8 | State what the contract or lease is for and the nature of the debtor's interest | 235 Swartz Road Lexington, SC 29072<br>Lessee | Swartz-Trotter Rentals, Inc.<br>PO Box 969<br>Lexington, SC, 29071 |
| | State the term remaining | 10 months | |
| | List the contract number of any government contract | | |
| 2.9 | State what the contract or lease is for and the nature of the debtor's interest | 1401 South Edgewood St Baltimore MD 21227 sublease; landlord holds 50% interest | Mowrey Family Limited Partnership<br>7865 Tuckahoe Ct<br>Fulton, MD, 20759 |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.10 | State what the contract or lease is for and the nature of the debtor's interest | Lease of nonresidential real property: MD Warehouse 1123 Wilso Drive Baltimore, MD 21223 | CI Baltimore ONLINE<br>COLFIN 2018-8 Industrial Owner LLC<br>PO Box 208383<br>Dallas, TX, 75320 |
| | State the term remaining | 5 year | |
| | List the contract number of any government contract | | |
| 2.___ | State what the contract or lease is for and the nature of the debtor's interest | | |
| | State the term remaining | | |
| | List the contract number of any government contract | | |
| 2.___ | State what the contract or lease is for and the nature of the debtor's interest | | |
| | State the term remaining | | |
| | List the contract number of any government contract | | |

**<u>Appendix G</u>**

(Southerland Settlement
Agreement)

## SETTLEMENT AGREEMENT

This Settlement Agreement ("***Agreement***") is made by and between the following entities: ***M&M Bedding LLC,*** a Wyoming limited liability company; ***East-West Bedding LLC***, a Wyoming limited liability company; ***Ohio Valley Bedding LLC***, a Wyoming limited liability company; ***Adjustable Bedding Concepts Inc.***, a Minnesota corporation; ***Canal Works Advertising LLC***, a Wyoming limited liability company; ***Southerland, Inc***., a Tennessee corporation; and ***American Adjustables LLC***, a Tennessee limited liability company (collectively, the "***Parties***").  The Parties hereby agree as follows:

WHEREAS, Southerland Inc.  and American Adjustables LLC (together, "***Southerland***") are in the business of manufacturing and suppling bed frames and mattresses; and

WHEREAS, Southerland provided product to M&M Bedding LLC ("***M&M***"), East-West Bedding LLC ("***East-West***"), Ohio Valley Bedding LLC ("***Ohio Valley***") and Adjustable Bedding Concepts Inc. ("***Adjustable Bedding***").  Together, M&M, East-West, Ohio Valley, and Adjustable Bedding are referred to herein as the "***Obligors***"; and

WHEREAS, Canal Works Advertising, LLC ("***Canal Works***"), an affiliate of M&M, East-West and Ohio Valley, provides marketing and advertising for each of the Obligors, which advertising generates a substantial majority, if not all, of Canal Works' revenue; and

WHEREAS, on May 28, 2021 (the "***Petition Date***"), M&M filed a voluntary petition for relief under Chapter 11, Subchapter V, of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland (the "***Bankruptcy Court***"), Case No. 21-13606 (the "***Bankruptcy Case***"); and

WHEREAS, the Obligors are each indebted to Southerland for product provided by Southerland; and

WHEREAS, Southerland has demanded payment from each of the Obligors; and

WHEREAS, the Obligors have all indicated that they are unable to presently pay the amounts due to Southerland and have raised various defenses to the demands for payment; and

1

WHEREAS, Southerland Inc. timely filed a proof of claim in the Bankruptcy Case asserting a claim in the amount of $328,020.38 for goods provided to M&M prior to the Petition Date; and

WHEREAS, American Adjustables timely filed a proof of claim in the Bankruptcy Case asserting a claim in the amount of $689,097.23 for goods provided to M&M prior to the Petition Date; and

WHEREAS, on August 25, 2021, M&M filed Debtor's Chapter 11, Subchapter V Plan (Dkt. No. 44) (the "***Bankruptcy Plan***") in the Bankruptcy Case; and

WHEREAS, on September 14, 2021, Southerland filed an Objection to Confirmation of Debtor's Chapter 11, Subchapter V Plan (Dkt. No. 52) in which, among other things, Southerland objected to M&M's failure to seek to avoid transfers made to Canal Works prior to the Petition Date for the benefit of the bankruptcy estate; and

WHEREAS, Southerland and the Obligors, including M&M, have entered into discussions to resolve their disputes regarding the amounts owed by the Obligors to Southerland; and

WHEREAS, the Parties have agreed to resolve this issue on the terms set forth in this Agreement.

NOW, therefore, in consideration of the promises contained in this Agreement, the Parties agree as follows:

## **TERMS AND CONDITIONS**

The foregoing recitals are an integral part of this Agreement and are incorporated herein by reference.

1.      **Indebtedness**.  The Obligors hereby stipulate and agree that Southerland asserts claims against the Obligors in the following amounts (the "***Indebtedness***"):

a.      M&M is indebted to Southerland in the amount of **$1,008,552.51** as of the Petition Date (the "***M&M Indebtedness***").

b.      East West is indebted to Southerland in the amount of **$256,165.70** as of _____ (the "***East West Indebtedness***").

2

    c.    Ohio Valley is indebted to Southerland in the amount of **$218,079.80** as of \_\_\_\_\_ (the "***Ohio Valley Indebtedness***").

    d.    Adjustable Bedding is indebted to Southerland in the amount of $459,759.52 as of \_\_\_\_\_ (the "***Adjustable Bedding Indebtedness***").

The Obligors stipulate and agree with respect to their Indebtedness to Southerland that they are waiving any and all defenses, counterclaims, recoupment, setoff, warranty claims or any other claims or defenses of any kind.

    2.    <u>**Settlement Amount**</u>.  In full satisfaction of the Indebtedness, the Obligors shall pay fifty percent of the Indebtedness for a total of $970,778.76 (the "***Settlement Amount***").  The Obligors and Canal Works shall be jointly and severally liable for the Settlement Amount.  Provided that the Settlement Amount is paid in full in accordance with the payment schedule set forth in this Agreement, or sooner, the remaining Indebtedness shall be deemed discharged.  If Obligors and Canal Works do not pay the Settlement Amount in accordance with the terms of this Agreement, Southerland may seek to collect the entire Indebtedness from them.

    3.    <u>**Settlement Payment Schedule**</u>.  The settlement payments shall be made in accordance with the following schedule:

    a.    M&M shall make payments totaling **$504,276.26** at the time intervals set forth in the column titled "Compromised UC" in <u>Exhibit A</u>, which is attached hereto.

    b.    East West shall pay **$128,082.85** in twelve (12) equal quarterly installments of **$10,673.57** beginning on January 15, 2022 and continuing on the fifteenth day of each quarter thereafter for a total of twelve quarters.

    c.    Ohio Valley shall pay **$109,039.90** through twelve (12) equal quarterly installments of **$9,086.66** beginning on January 15, 2022 and continuing on the fifteenth day of each quarter thereafter for a total of twelve quarters.

    d.    Adjustable Bedding shall pay **$25,000** within thirty days of the execution of this Agreement.  The remaining **$204,379.76** to be paid by Adjustable Bedding shall be paid in twelve (12) equal quarterly installments of **$17,031.65** beginning on January 15, 2022 and continuing on the fifteenth day of each quarter thereafter for a total of twelve (12) quarters.

3

All payments shall be made payable to Southerland Inc. and delivered to **Southerland, Inc., PO Box 269, Antioch, TN 37011.**  Such payments shall be deemed made upon receipt.

4.    **Confessed Judgment Notes**.  Each Obligor shall execute a confessed judgment note in the amount of its portion of the Indebtedness.  The confessed judgment notes shall be in a form substantially similar to the confessed judgment note attached hereto as <u>Exhibit B</u>.  So long as the Obligor timely makes the settlement payments in accordance with paragraph 3, above, its confessed judgment note shall not be filed or recorded.  Upon timely completion of the Settlement Payment Amount, Southerland shall mark the confessed judgment notes as satisfied and return them to the respective Obligor.

5.    **Default, Notice and Cure Period**.  In the event that any Obligor fails to timely make any payment as required in this Agreement, Southerland shall provide written notice to the Obligor to the notice address in this Agreement, and Obligor shall have five (5) business days to cure such default.  If Obligor does not cure the default within five (5) business days, Southerland shall be entitled to record the confessed judgment note as to such obligor and take any steps to enforce its rights to collect such indebtedness from any Obligor and/or from Canal Works.

6.    **Notices**.  All notices hereunder shall be in writing and shall be effective if given by email and overnight delivery service when delivered at the address and mail address specified in this paragraph, which address may be changed by delivery of written notice:

<u>To Southerland Inc. and American Adjustables LLC</u>:

6050 Dana Way
Antioch, TN 37013

<u>To M&M Bedding LLC; East-West Bedding LLC; Ohio Valley Bedding LLC; and Canal Works Advertising, LLC</u>:

1401 S Edgewood Street
Baltimore, MD 21227

<u>To Adjustable Bedding Concepts Inc.</u>

315 Marie Ave E
West St Paul, MN 55118

4

7.    **Full Satisfaction of Claims**.  The timely payment of the entire Settlement amount shall constitute full satisfaction of claims held by Southerland against the Obligors for goods provided prior to the dates identified in paragraph 1 above.  Upon timely payment of the Settlement Amount by or on behalf of the Obligors, the Obligors shall have no further obligation to Southerland with respect to goods delivered prior to such dates and the Indebtedness shall be discharged.  This Agreement does not affect any claims that may arise for goods delivered or charges incurred after the dates set forth in paragraph 1.

8.    **M&M Bankruptcy Case**.  This Agreement shall only be effective upon entry of an order by the Bankruptcy Court approving the Agreement.  Such order shall provide that any automatic stay or discharge injunction is modified, to the extent necessary, to allow Southerland to take all actions as set forth in this Agreement, including without limitation recording the confessed judgment note and taking further enforcement action as permitted by this Agreement.

9.    **Entire Agreement; Applicability**.  This Agreement constitutes the entire agreement and understanding concerning the subject matter of the agreement between the Parties and supersedes and replaces all prior negotiations and proposed settlement agreements, written or oral.  No modification or waiver of any of the terms of this Agreement shall be valid and enforceable unless in writing by all Parties affected by such modification.

10.    **Counterparts**.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which together shall constitute one Agreement. In addition, this Agreement may be executed through the use of counterpart signature pages. The signature of any Party on any counterpart Agreement or counterpart signature page shall be deemed to be a signature to and may be appended to one document.

11.    **Construction of Agreement**.  Each Party acknowledges and represents that it has had a full and complete opportunity to review this Agreement, and make suggestions or changes, as had counsel for each Party.  The Parties acknowledge that this Agreement shall not be construed against the drafter by virtue of said party being the drafter.  Whenever the context of this Agreement so requires, the singular number shall include the plural, and the plural the singular.  The section headings and captions contained herein are for reference purposes only and shall not in any way affect the meaning and interpretation of this Agreement.

5

12. **No Assignment**.  Each Party warrants and represents that it has not assigned or transferred to any person any claims, defenses, counterclaims or other rights related to the subject matter of this Agreement.

13. **Authority to Execute**.  Each signatory to this Agreement warrants that the person executing this Agreement on its behalf has full authority and capacity to enter into and execute the terms and conditions of this Agreement and to legally bind such signatory to this Agreement.

14. **Successors in Interest**.  All of the provisions in this Agreement shall apply to, bind and be obligatory upon the Parties hereto, their agents, officers, directors, employees, attorneys, representatives, personal representatives, heirs, successors and assigns.

15. **Severability**.  If any provision or portion of this Agreement is held by a court of competent jurisdiction to be invalid, void, or unenforceable for any reason, the remaining provision and portions thereof shall remain valid and enforceable notwithstanding, unless the provision or portion thereof found to be unenforceable is of such material effect that this Agreement cannot be performed in accordance with the intent of the Parties in the absence of any such provision.

16. **Cooperation**.  The Parties agree to cooperate fully, to execute and deliver any and all supplementary documents, and to take all additional action that reasonably may be necessary or appropriate to give full force and effect to the terms and intent of this Agreement without the receipt of further consideration.

17. **Effective Date**.  This agreement shall be effective after it has been fully executed by all Parties, the Bankruptcy Court has entered an order approving the Agreement as set forth in paragraph 8 above, and the Obligors have each executed the confessed judgment promissory note and provided the original executed note to Southerland.

*Signatures on Following Page*

6

## <u>AGREED AND ACCEPTED</u>

**M&M Bedding LLC**

Dated: _____

By: _____

Its: _____

**East-West Bedding LLC**

Dated: _____

By: _____

Its: _____

**Ohio Valley Bedding LLC**

Dated: _____

By: _____

Its: _____

**Adjustable Bedding Concepts Inc.**

Dated: _____

By: _____

Its: _____

7

**Canal Works Advertising LLC**

Dated: _____          _____

                                 By:    _____

                                 Its:   _____


**Southerland, Inc.**

Dated: _____          _____

                                 By:    _____

                                 Its:   _____


**American Adjustables LLC**

Dated: _____          _____

                                 By:    _____

                                 Its:   _____

8

# EXHIBIT A

Net available for creditors          $679,235.98

| Creditor (Claim no) | Claim Scheduled | Claim Filed | Claim To Be Paid | Total Distribution |
|---|---|---|---|---|
| **SECURED** | | | | |
| None | | | | |
| | | | | |
| **PRIORITY** | | | | |
| Anticipated Professionals (admin) | | | $73,576.00 | $73,576.00 |
| Total Secured/Priority | | | | |
| Net for Nonpriority Unsecured | | | | |
| | | | | |
| **CLASS ACTION CLAIMANT** | | $21,015,000.00 | $0.00 | $0.00 |
| | | | | |
| **UNDISPUTED UNSECUREDS** | | | | |
| InContact Inc. | $73,491.72 | | $73,491.72 | $73,491.72 |
| OptimumHQ | $15,748.00 | | $15,748.00 | $15,748.00 |
| Total | | | | $89,239.72 |
| | | | | |
| **COMPROMISED GENERAL UNSECURED (50% DISTRIBUTION)** | | | | |
| American Adjustables (2) | | $689,097.23 | | |
| Southerland (3) | | $328,020.28 | | |
| Total | | | $504,276.26 | $504,276.26 |

| Schedule of Payments | | Admin | Class Action | Compromised UC | Undisputed UC | Total Paid |
|---|---|---|---|---|---|---|
| | 1/15/22 | $25,000.00 | $0.00 | $25,000.00 | | $50,000.00 |
| | 4/15/22 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 7/15/22 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 10/15/22 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 1/15/23 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 4/15/23 | $12,144.00 | $0.00 | $37,856.00 | | $50,000.00 |
| | 7/15/23 | | $0.00 | $37,856.00 | $12,144.00 | $50,000.00 |
| | 10/15/23 | | $0.00 | $37,856.00 | 12,144.00 | $50,000.00 |
| | 1/15/24 | | $0.00 | $37,856.00 | 12,144.00 | $50,000.00 |
| | 4/15/24 | | $0.00 | $37,856.00 | 12,144.00 | $50,000.00 |
| | 7/15/24 | | $0.00 | $37,856.00 | 12,144.00 | $50,000.00 |
| | 10/15/24 | | | $37,856.00 | 12,144.00 | $50,000.00 |
| | 1/15/25 | | | $37,856.00 | 12,144.00 | $50,000.00 |
| | 4/15/25 | | | $25,004.26 | 4,231.72 | $29,235.98 |
| Total paid | | $85,720.00 | | $504,276.26 | 89,239.72 | $679,235.98 |

# EXHIBIT B

## CONFESSED JUDGMENT PROMISSORY NOTE

## RECITALS

WHEREAS, Southerland Inc. and American Adjustables LLC (together, "**Southerland**" or "**Creditor**"), as manufacturers and suppliers of bed frames and mattresses, provided product to M&M Bedding LLC, a Wyoming limited liability company ("**M&M**" or "**Maker**"), a retailer, which M&M in turn sold to consumers; and

WHEREAS, on May 28, 2021 (the "**Petition Date**"), M&M filed a voluntary petition for relief under Chapter 11, Subchapter V, of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Maryland; and

WHEREAS, as of the Petition Date, M&M is indebted to Southerland in the amount of $1,008,552.51 (the "**M&M Indebtedness**); and

WHEREAS, M&M, Southerland, and certain other parties entered into a settlement agreement (the "**Settlement Agreement**") on [INSERT DATE] in which M&M agreed to pay fifty percent of the M&M Indebtedness – or $504,276.26 (the "**Settlement Amount**") – pursuant to the payment schedule set forth in Paragraph 3(a) of the Settlement Agreement (the "**M&M Payment Schedule**").  Provided that the Settlement Amount is paid in full and in accordance with the M&M Payment Schedule, Southerland agrees to discharge M&M's remaining Indebtedness and M&M shall have no further obligation to Southerland with respect to any product delivered prior to [INSERT DATE].  However, if M&M fails to pay the Settlement Amount in accordance with the terms of the Settlement Agreement, Southerland may seek to collect the remaining portion of the M&M Indebtedness; and

WHEREAS, this Confessed Judgment Note ("**Note**") is a result and culmination of negotiations and discussions between M&M and Southerland in order to resolve the Indebtedness owed by M&M to Southerland without resorting to litigation.  M&M hereby reaffirms the M&M Indebtedness in full and agrees to satisfy such Indebtedness by making the payments as set forth below.

## PROMISSORY NOTE

$1,008,552.51                                                    November __, 2021

FOR VALUE RECEIVED, M&M Bedding LLC promises to pay to the order of Southerland, Inc. the principal amount of $1,008,552.51 by making the payments as set forth herein.

1.    Recitals.  The Recitals set forth above are contractual in nature and are incorporated by reference and made a part of this Agreement as if fully restated here.

2.    Repayment Terms.  This Note shall be due and payable as follows: (a) an initial

payment of $25,000 on January 15, 2022; (b) a first installment payment of $37,856.00 on April 15, 2022; (c) a second installment payment of $37,856.00 on July 15, 2022; (d) a third installment payment of $37,856.00 on October 15, 2022; (e) a fourth installment payment of $37,856.00 on January 15, 2023; (f) a fifth installment payment of $37,856.00 on April 15, 2023; (g) a sixth installment payment of $37,856.00 on July 15, 2023; (h) a seventh installment payment of $37,856.00 on October 15, 2023; (i) an eighth installment payment of $37,856.00 on January 15, 2024; (j) a ninth installment payment of $37,856.00 on April 15, 2024; (k) a tenth installment payment of $37,856.00 on July 15, 2024; (l) an eleventh installment payment of $37,856.00 on October 15, 2024; (m) a twelfth installment of $37,856.00 on January 15, 2025; and (n) a final payment of $25,004.26 on April 15, 2025 (the "*Maturity Date*").

3.    <u>Payments</u>.    Payments shall be made by check or ACH transfer and shall be deemed paid when received by Southerland.  If any payment received by the Creditor under this Note is rescinded, avoided, or for any reason returned because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation under this Note as though such payment had not been made.

4.    <u>Satisfaction of Indebtedness</u>.    Timely payment of the Settlement Amount in accordance with Paragraph 2 shall satisfy the Maker's obligation to pay the remaining M&M Indebtedness, and the balance of the Indebtedness shall be discharged.

5.    <u>Prepayment</u>.    The Maker may prepay this Note in whole or in part at any time without premium or penalty.

6.    <u>Default and Cure</u>.    If Maker fails to make any payment in full within the time period set forth in Paragraph 2, Maker shall be in default.  Upon any such default, Southerland may provide written notice of such default after which Maker shall have five (5) business days to cure such default.  The failure to cure within such five day period shall constitute an Event of Default.  The Maker agrees to pay to the Creditor and reimburse the Creditor for any and all costs and expenses, including actual attorneys' fees and court costs, if any, incurred by the Creditor in connection with the enforcement or collection hereof, both before and after the commencement of any action to enforce or collect this Note, but whether or not the Creditor commences any such action.  The Maker waives presentment, protest and demand, notice of protest, notice of dishonor and nonpayment of this Note and expressly agrees that this Note or any payment due hereunder may be extended from time to time by the Creditor without in any way affecting the liability of the Maker hereunder.

7.    <u>Rights and Remedies</u>.    The rights and remedies of the Creditor hereunder and under the Settlement Agreement shall be cumulative and concurrent and may be pursued singly, successively or together at the sole discretion of the Creditor, and may be exercised as often as occasion therefor shall occur, and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release of the same or any other right or remedy.

8.    <u>Confession of Judgment</u>.    The Maker authorizes any clerk of court or any attorney-at-law to appear for the Maker before any court, having jurisdiction, within the United States or elsewhere, and confess judgment against the Maker, as of any time after any sum is due

2

hereunder (whether by demand, stated maturity, acceleration or otherwise) for the unpaid balance of this Note and all sums due in connection herewith, including principal, interest, fees, court costs, and expenses, together with attorneys' fees actually incurred by the Creditor in connection with enforcing any of its rights and remedies under this Note.  The foregoing authority and power to confess judgment shall not be exhausted by one or more exercises of it or by any imperfect exercise of it, shall not be extinguished by any judgment entered because of it and may be exercised before, during or after the sale, liquidation or other disposition by the Creditor of any property directly or indirectly securing this Note or the exercise or enforcement by the Creditor of any other right or remedy of the Creditor with respect to this Note.  The Maker agrees that any agreements of the Maker contained in this Note or any other agreement to pay any costs or expenses, including attorneys' fees and expenses, paid or incurred by the Creditor shall not be merged into, or otherwise impaired by, any such judgment by confession, but the Creditor shall not be entitled to recover on account of such costs or expenses any amount in excess of the greater of (a) such costs or expenses included in any judgment by confession or (b) such costs or expenses actually paid or incurred by the Creditor.

9.    <u>No Amendment</u>.  No extension of the time for the payment of this Note or any installment due hereunder, made by agreement with any person now or hereafter liable for the payment of this Note, shall operate to release, discharge, modify, change or affect the original liability of the Maker under this Note, either in whole or in part, unless the Creditor agrees otherwise in writing.  This Note may not be changed orally, but only by an agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.

10.   <u>Waivers</u>.  Maker stipulates and agrees that it is indebted to Southerland in the amount of the M&M Indebtedness and that Maker waives any and all defenses, counterclaims, rights of recoupment or setoff, warranty claims or any other claims or defenses of any kind.  The Maker waives and renounces, to the fullest extent permitted by law, all rights to the benefits of any moratorium, reinstatement, marshaling, forbearance, valuation, stay, extension, redemption, appraisement, exemption and homestead now or hereafter provided by the Constitution and laws of the United States of America and of each state thereof, both as to itself and as to all of its property, real and personal, against the enforcement and collection of the obligations evidenced by this Note.

11.   <u>WAIVER OF TRIAL BY JURY</u>. THE MAKER AND THE CREDITOR WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH THE MAKER AND THE CREDITOR MAY BE PARTIES, ARISING OUT OF OR IN ANY WAY PERTAINING TO THIS NOTE.  THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE.  THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY THE MAKER, AND THE MAKER AGREES THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.  THE MAKER FURTHER REPRESENTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL,

3

SELECTED OF THEIR OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

12.     <u>Severability</u>.  If any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be construed as if such invalid, illegal, or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal, or unenforceable.

13.     <u>Captions</u>.  The captions herein set forth are for convenience only and shall not be deemed to define, limit, or describe the scope or intent of this Note.

14.     <u>Time of the Essence</u>.  Time is of the essence as to each and every provision of this Note.

15.     <u>Successors and Assigns</u>.  All covenants and agreements of the Maker set forth in this Note shall bind the Maker and its successors and assigns and shall inure to the benefit of, and be enforceable by, the Creditor and its successors and assigns.

16.     <u>Assignment</u>.  The Creditor may, without notice to or consent of the Maker, sell, assign or transfer to any person or persons this Note, and each such person or persons shall have the right to enforce this Note as fully as the Creditor.

17.     <u>Governing Law</u>.  This Note, having been executed and delivered under seal in the State of Maryland, shall be governed by, construed under and enforced in all respects according to the internal laws of the State of Maryland.

18.     <u>Authority</u>.  The Maker represents and warrants to the Creditor, by signing this Note, that all necessary or appropriate corporate, partnership, or limited liability company authorizations or resolutions required for the same (if any) have been secured.

IN WITNESS WHEREOF, the Maker, on the day and year first above written, has caused this Note to be executed under seal.


M&M Bedding LLC


_____          By:_____(SEAL)
Witness:                                 (Print Name):
By (Print Name):                         Its (Position):


4